IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM LIEBHART and NANCY LIEBHART,

                        Plaintiffs,

v.                                                           OPINION & ORDER

SPX CORPORATION, TRC COMPANIES, INC., and          16-cv-700-jdp
APOLLO DISMANTLING SERVICES, INC.,

                        Defendants.

---

This case arises out of the demolition of an old industrial facility in Watertown, Wisconsin. Plaintiffs William Liebhart and Nancy Liebhart, who lived on property adjacent to the facility, allege that the demolition contaminated the surrounding area with polychlorinated biphenyls, or PCBs, causing the Liebharts to suffer from a variety of health problems, including acute sinusitis, bronchitis, conjunctivitis, vertigo, skin infections, and swollen lymph nodes. The Liebharts are suing SPX Corporation (the owner of the site), TRC Companies, Inc. (the firm that oversaw the demolition), and Apollo Dismantling Services, LLC (the company that conducted the demolition) under various federal and state law theories.

Defendant SPX has filed a motion to dismiss many of the Liebharts' claims on the following grounds: (1) the Resource Conservation and Recovery Act (RCRA) does not regulate the disposal of PCB waste; (2) the Liebharts do not state a claim under the Toxic Substances Control Act (TSCA) because they are not alleging that the demolition is ongoing; (3) SPX cannot be held strictly liable because the demolition does not meet the requirements for an "abnormally dangerous activity" under Wisconsin law; and (4) the Liebharts' allegations do not meet the requirements for bringing a claim for negligent infliction of emotional distress. Dkt. 35.

Defendant TRC has adopted SPX's motion as its own and has filed its own motion to dismiss the Liebharts' claim for strict liability. Dkt. 31. None of the defendants seek dismissal of the Liebharts' claims for negligence, nuisance, or trespass.[1] For their part, the Liebharts have filed a motion for leave to amend their complaint to include a request for civil penalties under the RCRA. Dkt. 49.

For the reasons explained below, the court will deny all of these motions.

ALLEGATIONS OF FACT

The Liebharts allege the following facts in their complaint. Dkt. 2.

Plaintiffs William and Nancy Liebhart own three properties adjacent to a former industrial facility in Watertown, Wisconsin. They lived in one of these properties until August 2016.

The facility was originally a woodworking factory. In the 1950s it was used to manufacture electrical transformers, which commonly included PCBs at the time. Both the International Agency for Research on Cancer and the Environmental Protection Agency have concluded that exposure to PCBs may have harmful effects on humans, including certain kinds of cancer, respiratory tract symptoms, gastrointestinal effects, mild liver effects, and effects on the skin and eyes such as chloracne, skin rashes, and eye irritation.

In 1998, defendant SPX became the owner of the facility, but by then the facility was not operational and SPX allowed it to lay idle. In 2010, laboratory analyses showed that

---

[1] SPX contends in its motion that Jacob Liebhart and Emily Liebhart do not have standing to bring claims for trespass and nuisance, Dkt. 36, at 26-30, but that contention is moot because Jacob and Emily have been dropped as plaintiffs. Dkt. 42 and Dkt. 43.

approximately 20,650 square feet of concrete contained PCBs at concentrations greater than 10 parts per million and as much as 3,310 parts per million. (The Liebharts say that the "residential standard" for PCBs is .22 ppm.)

In December 2014, SPX submitted a plan to the EPA for a proposed demolition of the facility. Under defendant TRC's supervision, defendant Apollo would remove the contaminated concrete and demolish the facility. In February 2015, the EPA approved the plan, subject to three conditions: 1) within 60 days of completion of the project, SPX would submit a completion report, including verification sampling results and other data; 2) within 60 days of completion of the project, SPX would file a deed restriction prohibiting the use of the property for residential purposes; and 3) SPX would give the EPA 45 days advance notice before transferring ownership of or responsibility for the site.

Shortly after the demolition began, the Liebharts observed plumes of dust coming from the demolition site as well as discolored snow on their properties. William Liebhart was diagnosed with impetigo, acute sinusitis, and lymphadenopathy. Nancy Liebhart was diagnosed with conjunctivitis and bronchitis, and vertigo. The family physician attributed these aliments to the exposure to the demolition dust.

The Liebharts collected a sample of the discolored snow for laboratory analysis, which also showed the presence of PCBs.

The demolition continued and the Liebharts continued seeing plumes of dust drifting onto their property. Oil leaking from a transformer drained into the Liebharts' soil. A laboratory analysis showed that the soil contained over 200 ppm of PCBs.

The Watertown Health Department confirmed "the existence of uncontrolled PCB-contaminated concrete" on the site, *id.*, ¶ 40, and notified the Wisconsin Department of

Resources, which notified defendant TRC. In April 2015, TRC collected soil samples from the Liebharts' properties. The test results showed that soil from the Liebharts' garden was about 5.5 ppm of PCBs, 25 times higher than the residential standard. Much of the food that the Liebharts consumed had come from that garden. Defendants obtained more soil samples in May 2015, November 2015, and January 2016, all of which showed PCBs in the soil.

In August 2016, William Liebhart suffered from a rash on his face, which his physician diagnosed as chloracne, a condition associated with exposure to PCBs. The Liebharts decided to move out of their home, as recommended by their physician.

ANALYSIS

A. Resource Conservation and Recovery Act

The Liebharts wish to bring a claim under 42 U.S.C. § 6972(a)(1)(B), which creates a private right of action against anyone "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." SPX seeks dismissal of the claim on the ground that PCBs are not a "hazardous waste" within the meaning of the RCRA.

SPX does not contend that PCBs do not meet the requirements for a "hazardous waste" under the statutory definition of the term in 42 U.S.C. § 6903(5) or that the RCRA explicitly excludes PCBs from the scope of § 6972(a)(1)(B). Rather, SPX takes a more circuitous route to reach its proposed interpretation.

The cornerstone of SPX's argument is 42 U.S.C. § 6905(b), which directs the EPA to "integrate all provisions of [the RCRA] for purposes of administration and enforcement and . . .

avoid duplication, to the maximum extent practicable, with the appropriate provisions of . . . such other Acts of Congress as grant regulatory authority to the" EPA. Because PCBs are already regulated expressly under the Toxic Substances Control Act and related regulations, SPX says that including PCBs within the scope of the RCRA would violate § 6905(b).

SPX also cites 42 U.S.C. § 6921(b)(1), which delegates to the EPA authority to "promulgate regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes . . . which shall be subject to the provisions of this subchapter." 42 U.S.C. § 6921(b)(1). Because the EPA has not identified PCBs as a hazardous waste subject to regulation under the RCRA, SPX says that *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), requires a conclusion that the meaning of "hazardous waste" in the RCRA does not include PCBs.

The Liebharts agree with SPX that PCBs do not qualify as a "hazardous waste" under the RCRA regulations. But they reject the conclusion that they fail to state a claim under the RCRA on two grounds: (1) the statutory definition of "hazardous waste" in the RCRA is broader than the definition in the EPA regulations; and (2) even if the PCBs in this case are not a "hazardous waste" under the RCRA, they are a "solid waste," which is also covered by the RCRA. *New York Communities for Change v. New York City Dep't of Educ.*, No. 11 CV 3494 SJ, 2012 WL 7807955, at *1 (E.D.N.Y. Aug. 29, 2012) (agreeing with both grounds), *report and recommendation adopted*, No. 11CV3494 SJ CLP, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013).

The court need not decide whether the RCRA statute and regulations define "hazardous waste" differently because the court agrees with the Liebharts that PCBs may qualify as a "solid waste" under § 6972(a)(1)(B). SPX simply ignores the question whether PCBs may qualify as a "solid waste," even in its reply brief, which is reason enough to deny the motion to dismiss

as to this claim. But even if the court assumes that SPX has not forfeited the issue for the purpose of its motion to dismiss, the court sees no obvious grounds for rejecting the Liebharts' contention that PCBs may qualify as a solid waste.

The RCRA defines "solid waste" to mean

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923) [42 U.S.C.A. § 2011 et seq.].

42 U.S.C. § 6903(27). The Liebharts allege in their complaint that the PCBs at issue in this case meet that definition. Dkt. 2, ¶ 75.

At this stage of the proceedings, the court is not persuaded that § 6905(b) requires PCBs to be excluded from the statutory definition of "solid waste." SPX interprets § 6905(b) as mandating a conclusion that there can be no overlap in the substances covered by the RCRA and any other federal environmental statute. According to SPX, if the TSCA regulates a substance, the RCRA necessarily does not. But that is not what § 6905(b) says. Rather, the language of the provision is clear that it is a directive to *the EPA* to "avoid duplication" when enacting *regulations* under the various environmental statutes. *United States v. Vineland Chem. Co.*, 692 F. Supp. 415, 420 (D.N.J. 1988) (§ 6905(b) "constitutes an exhortation to the EPA to avoid unnecessary and overlapping regulation"). Section 6905(b) does not purport to limit what would otherwise be the natural scope of the statutory language in the RCRA. *Riverkeeper v. Taylor Energy Co.*, 117 F. Supp. 3d 849, 852 (E.D. La. 2015) (§ 6905(b) "is directed to the

Administrator of the EPA, and [the defendant] cites no precedent for applying it to a citizen suit").

Even in cases in which courts have held that § 6905(b) may bar a claim under the RCRA, the court has required the defendant to show that allowing the RCRA claim to go forward would actually be inconsistent with another statute. *E.g.*, *San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*, 81 F. Supp. 3d 847, 866 (N.D. Cal. 2015). SPX has not attempted to make that showing.

SPX does not contend that the EPA has purported to narrow the meaning of "solid waste" under the RCRA to an exclusive list of substances, as SPX says the EPA has done with respect to "hazardous waste." Because SPX identifies no other grounds for dismissing the Liebharts' claim under the RCRA, the court will deny SPX's motion as to this claim.

**B.     Toxic Substances Control Act**

The Liebharts contend that defendants violated regulations promulgated under the TSCA and related to PCBs, and they rely on 15 U.S.C. § 2619(a)(1) as giving them a private right of action. That section authorizes suits for injunctive relief against someone "who is alleged to be in violation of this chapter or any rule promulgated under" certain sections of the TSCA.

SPX contends that § 2619(a)(1) requires an ongoing violation and that the Liebharts have not alleged such a violation because they admit that defendants completed the demolition in August 2015. The Liebharts agree that an ongoing violation is required, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987), but they argue that they meet that requirement because defendants have yet to clean up the discharge of PCBs.

7

Whether the Liebharts have alleged an ongoing violation obviously depends on the nature of the law at issue. If the law simply prohibits the actual discharge of PCBs, then the alleged violation in this case occurred in the past. But if the law more generally prohibits contamination by PCBs, then a failure to remediate could qualify as an ongoing violation. Neither side develops an argument under a particular regulation in their briefs. The closest either side comes is that the Liebharts include a block quote from an administrative decision that discusses 40 C.F.R. § 761.60, a lengthy regulation that includes many requirements regarding the disposal of PCBs. But the Liebharts do not allege in their brief or their complaint that defendants violated any part of § 761.60.

Although the parties' briefs are not helpful, the Liebharts allege in their complaint that defendants are failing to comply with various requirements in 40 C.F.R. § 761.125 regarding "PCB spill cleanup." Dkt. 2, ¶¶ 52–54. They also allege that defendants violated 40 C.F.R. § 761.61 and 40 C.F.R. Part 761, Subpart G, which impose requirements on disposing of PCBs. *Id.*, ¶ 88. SPX does not challenge the sufficiency of any of those allegations. Obviously, if the regulations impose requirements to clean up a PCB spill or dispose of PCB in a particular manner and SPX has not met all of those requirements, then there is an ongoing violation of the regulations. Accordingly, the court will deny SPX's motion to dismiss this claim.

## C. Strict liability

Wisconsin law imposes strict liability on a person who harms another while engaging in an "abnormally dangerous activity." *Fortier v. Flambeau Plastics Co., a Div. of Flambeau Corp.*, 164 Wis. 2d 639, 667–68, 476 N.W.2d 593, 604–05 (Ct. App. 1991). Whether an activity is abnormally dangerous is informed by a number of factors listed in the *Restatement (Second) of*

8

*Torts* § 520 (1977), including the degree of the risk, the likelihood of harm, the ability to eliminate the risk with the exercise of reasonable care, and the value of the activity to the community, among other factors. *Fortier*, 164 Wis. 2d at 667–68, 476 N.W.2d at 604–05.

Both SPX and TRC seek dismissal of this claim on the ground that the conduct alleged in this case—demolishing a facility containing PCBs adjacent to residential property—is not an abnormally dangerous activity. Defendants point out that determining whether an activity is abnormally dangerous is a question of law for the court to decide. *Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir. 1990) (citing *Restatement (Second) of Torts* § 520, comment *l* (1977)). But that determination is obviously made in light of the facts presented to the court. *Restatement (Second) of Torts* § 520, comment *l* (court must "consider[] . . . all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence"). Thus, it is not surprising that most of the cases defendants cite to support dismissal of this claim are summary judgment decisions. *E,g.*, *Indiana Harbor*, 916 F.2d at 1175; *G.J. Leasing Co. v. Union Elec. Co.*, 825 F. Supp. 1363, 1365 (S.D. Ill. 1993). *See also Estate of Thompson v. Jump River Elec. Co-op.*, 225 Wis. 2d 588, 590, 593 N.W.2d 901, 903 (Ct. App. 1999); *Grube v. Daun*, 213 Wis. 2d 533, 539, 570 N.W.2d 851, 854 (1997); *Fortier,* 164 Wis. 2d at 651, 476 N.W.2d at 597.

Defendants do not cite any cases from the Wisconsin courts or the Court of Appeals for the Seventh Circuit in which the court concluded as a matter of law that demolishing a facility containing PCBs near a residence cannot qualify as an abnormally dangerous activity. Although the court in *Ganton Techs., Inc. v. Quadion Corp.*, 834 F. Supp. 1018, 1020 (N.D. Ill. 1993), concluded that "the clean up of PCB's from an industrial site is not an abnormally dangerous activity" under Illinois law, the court did not provide any reasoning. The court cited

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989), but the focus of that case was on the question whether a plaintiff can recover from a defendant that did not participate in the activity that caused the harm. As defendants acknowledge, the court in *Bloomington* did not hold that the handling of PCBs could never be considered an abnormally dangerous activity under any circumstances.

Defendants may be correct that that the activity at issue in this case is not abnormally dangerous under Wisconsin law, but that issue should be decided in the context of a developed record rather than on a motion to dismiss, so the court will deny SPX's motion as to this claim.

**D. Negligent infliction of emotional distress**

Plaintiffs suing for negligent infliction of emotional distress under Wisconsin law must prove the same elements as any other negligence claim—breach of the duty of care, injury, and causation—and also that their emotional distress was "severe." *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶ 38, 351 Wis. 2d 479, 514, 840 N.W.2d 255, 271. If the plaintiffs satisfy these elements, the court must determine as a matter of law whether the claim is barred by public policy. *Camp ex rel. Peterson v. Anderson*, 2006 WI App 170, ¶¶ 16-17, 295 Wis. 2d 714, 722–23, 721 N.W.2d 146, 150–51.

SPX contends that the Liebharts' claim for negligent infliction of emotional distress should be dismissed on two grounds: (1) under *Kleinke v. Farmers Co-op. Supply & Shipping*, 202 Wis. 2d 138, 141, 549 N.W.2d 714, 715 (1996), public policy considerations preclude recovery in this case; and (2) the Liebharts have not adequately alleged that any emotional distressed they suffered was "severe."[2] The court disagrees with both contentions.

---

[2] In its opening brief, SPX also argued that the claim should be dismissed because the Liebharts were trying to recover for fears about future injuries, which are not compensable under Wisconsin tort law. *Alsteen v. Wauleco, Inc.*, 2011 WI App 105, ¶ 2, 335 Wis. 2d 473, 476, 802

10

In *Kleinke*, 202 Wis. 2d at 142, 549 N.W.2d at 715, the plaintiffs alleged that the defendants had flooded the plaintiffs' basement with oil and the plaintiffs sought to recover damages for emotional distress. The court concluded that "it is unlikely that a plaintiff could ever recover for the emotional distress caused by negligent damage to his or her property" because property damage is not "an extraordinary event" and because the "sentimental value" of a particular piece of property is easy for a plaintiff to fabricate and difficult for a defendant to take into account in advance. *Kleinke*, 202 Wis. 2d at 145–46, 549 N.W.2d at 716–17.

*Kleinke* is easily distinguishable from this case because the Liebharts are alleging much more than mere property damage. Rather, they allege that PCB exposure caused a series of health conditions over a period of two years, culminating in their doctor's recommendation to leave their home to prevent further harm. This is not a situation in which the plaintiffs are trying to recover for emotional distress caused by damage to their property; the claim relies on harm to the Liebharts' own health.

SPX resists the conclusion that *Kleinke* is distinguishable, pointing to a line in the decision in which the court noted that the plaintiffs alleged that they suffered from "physical problems due to oil fume inhalation." *Kleinke*, 202 Wis. 2d at 142, 549 N.W.2d at 715. But SPX's reliance on this stray remark in misplaced. The court did not describe the "physical problems" in the opinion, suggesting that they were not significant. And when summarizing the plaintiffs' requests for relief, the court listed "property damage, loss of out-of-pocket expenses, and severe emotional distress," *Kleinke*, 202 Wis. 2d at 141, 549 N.W.2d at 715, suggesting that the plaintiffs were not relying on harm to their health as a predicate to recovery

---

N.W.2d 212, 213–14. SPX abandoned this argument in its reply brief, presumably because it realized that the Liebharts have alleged present injuries as well.

11

for emotional distress. Regardless, the court said nothing more about any alleged physical injuries throughout the rest of the opinion, but instead framed the question as whether property damage can support a claim for emotional distress. In the absence of any discussion in the decision, it would be unreasonable to construe *Kleinke* as barring a claim for emotional distress when the plaintiffs are alleging that the defendants' conduct caused health problems.

As for the question whether the Liebharts adequately alleged that their emotional distress was severe, SPX acknowledges that the Liebharts included that allegation in their complaint, Dkt. 2, ¶¶ 4 and 118, but SPX says that the other allegations in the complaint do not support this "naked assertion," Dkt. 36, at 23 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court disagrees. The Liebharts allege that since 2014 a toxic substance has been contaminating their property, including a garden that was the source of much of their food; they and other members of their family have suffered from a variety of medical problems as a result of the contamination; and they were forced to leave to leave their home in an attempt to avoid future injuries. At the pleading stage, those allegations are sufficient to support the drawing of a plausible inference that the Liebharts have suffered from severe emotional distress. *O'Gorman v. City of Chicago*, 777 F.3d 885, 888 89 (7th Cir. 2015) ("A complaint need not contain detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is facially plausible.").

**E. Motion for leave to amend**

The Liebharts seek leave to amend their complaint for the sole purpose of including a request for civil penalties under the RCRA. They do not ask to add any allegations or claims.

The Liebharts' request was unnecessary. "A prevailing party may obtain any relief to which he's entitled even if he 'has not demanded such relief in [his] pleadings.'" *Bontkowski v.*

*Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (quoting Fed. R. Civ. 54(c)). If the Liebharts prevail on their claim under the RCRA, the court will determine at that time whether a penalty is appropriate.

ORDER

IT IS ORDERED that:

1. The motions to dismiss filed by defendant TRC Companies, Inc., Dkt. 31, and defendant SPX Corporation, Dkt. 35, are DENIED.

2. The motion for leave to amend the complaint filed by plaintiffs William Liebhart and Nancy Liebhart, Dkt. 49, is DENIED as unnecessary.

Entered November 2, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge