IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM LIEBHART and NANCY LIEBHART,

                Plaintiffs,

v.

SPX CORPORATION, TRC ENVIRONMENTAL
CORPORATION, and APOLLO DISMANTLING
SERVICES, INC.,

                Defendants.

OPINION & ORDER

16-cv-700-jdp

---

Plaintiffs William and Nancy Liebhart own several properties, including their former residence, that are adjacent to an old industrial site that had been used to manufacture various types of equipment for several decades. After manufacturing ceased, the site lay dormant for several years until the current owner, defendant SPX Corporation, decided to demolish the structures on it in accordance with a plan approved by the Environmental Protection Agency. SPX hired defendant Apollo Dismantling Services, Inc. to perform the demolition and defendant TRC Environmental Corporation as the environmental consultant.[1]

The Liebharts allege that dust containing polychlorinated biphenyls, or PCBs, settled on their property as a result of the demolition and caused the Liebharts to suffer from various health problems, such as chloracne.[2] The Liebharts assert claims under the Resource

---

[1] The Liebharts identified one defendant as "TRC Companies, Inc." in their complaint, but the court has amended the caption to reflect the defendant's correct name, as identified in the parties' summary judgment materials.

[2] The parties do not explain what PCBs are in their briefs or proposed findings of fact. The EPA provides the following description:

> PCBs belong to a broad family of man-made organic chemicals known as chlorinated hydrocarbons. PCBs were domestically

Conservation and Recovery Act, the Toxic Substances Control Act, and several theories of state common law.

More than a dozen motions are ready for review, including motions for summary judgment filed by both sides. The court will grant defendants' motions for summary judgment and deny the Liebharts' motion as they relate to the Liebharts' federal claims. The reason is a failure of proof. The Liebharts simply have not adduced evidence that defendants have violated the relevant standards under the RCRA or TSCA. Because the Liebharts rely on 28 U.S.C. § 1367 as the basis for exercising jurisdiction over their state law claims, the court will dismiss those claims under § 1367(c)(3) without prejudice to the Liebharts' refiling them in state court.

Defendants also seek to exclude the opinions of two of the Liebharts' experts, David Carpenter and John Woodyard. The court will grant these motions in part for the reasons explained in the opinion and otherwise deny them as moot as to opinions that are not relevant to the summary judgment motions.

Finally, the Liebharts seek to amend their complaint to add new claims and to supplement Carpenter's expert report to include opinions about the new claim. The court will deny these motions as untimely, unfairly prejudicial, and futile. The court will deny all other motions as moot.

---

manufactured from 1929 until manufacturing was banned in 1979. They have a range of toxicity and vary in consistency from thin, light-colored liquids to yellow or black waxy solids. Due to their non-flammability, chemical stability, high boiling point and electrical insulating properties, PCBs were used in hundreds of industrial and commercial applications.

https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls-pcbs#what (last visited March 23, 2018).

BACKGROUND

The court will provide some undisputed background facts for context. More facts related to the merits of the Liebharts' claims will be discussed in the opinion.

The Liebharts own the properties at 1113 South Third Street, 1115 South Third Street, 1117 South Third Street, and 1129 South Third Street in Watertown, Wisconsin. Until August 2016, the Liebharts resided at 1115 South Third Street.

The Liebharts' properties are adjacent to a site at 304 Hart Street, which is currently owned by defendant SPX. The site is approximately 5.3 acres in size and was occupied by an approximately 174,000 square foot manufacturing facility and office building. The facility was used for industrial manufacturing as far back as the 1920s, making items such as heat-treating furnaces, transformers, and hot plates. The manufacturing of transformers ceased in 1971 and all other operations ceased in 2005.

In 2009, SPX retained defendant TRC to conduct a "Phase I Environmental Site Assessment" of the former manufacturing facility. SPX also retained Delta Consultants to evaluate the potential presence of PCBs on the concrete floor of the Facility. In December 2010, Delta published its findings that the concrete in the facility contained PCBs.

In or around November 2014, TRC, on behalf of SPX, submitted a plan to the EPA to demolish the site at 304 Hart Street. (Defendants do not explain what was happening between 2010 and 2014). In February 2015, the EPA approved a revised version of the plan. The demolition was completed by the end of March 2015.

SPX later conducted a sampling analysis of some of the soil in both the demolition site and the Liebharts' property. Some of the soil from both sites contained varying levels of PCBs. In September 2016, SPX submitted a remediation plan to the Wisconsin Department of

Natural Resources for the purpose of removing contaminated soil. After SPX made multiple revisions, the department approved SPX's sampling plan. SPX is waiting for permission from the Liebharts to conduct the necessary sampling on their property.

ANALYSIS

The Resource Conservation and Recovery Act creates a private right of action against anyone "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). The Toxic Substances Control Act authorizes suits against someone "who is alleged to be in violation of this chapter or any rule promulgated under" certain sections of the TSCA. 15 U.S.C. § 2619(a)(1). Neither statute authorizes an award of damages in citizen suits like this one. *Abreu v. United States*, 468 F.3d 20, 32 (1st Cir. 2006); *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs,* 426 F.3d 241, 248 n.5 (3d Cir. 2005).[3]

Defendants raise two arguments as to each claim, one argument that applies to each claim individually and one that applies to both. As to the RCRA, defendants say that the Liebharts have not adduced evidence that there is an imminent and substantial danger to their health or the environment. As to the TSCA, defendants say that the Liebharts have failed to

---

[3] Several months ago, the parties debated whether the Liebharts could seek civil penalties in the context of their claim under the RCRA. Dkt. 54 and Dkt. 58. The court concluded that the debate was premature and it declined to resolve the issue. Dkt. 76, at 12–13. Neither side raises this issue again, so it is not clear whether there is still a dispute. Regardless, the Liebharts do not contend that the standard for obtaining civil penalties for a violation of § 6972(a)(1)(B) is any less demanding than the standard for obtaining injunctive relief and they do not contend that their request for penalties has any bearing on defendants' summary judgment motions, so the court need not resolve the issue in this order either.

show that there is an "ongoing violation," which is required to obtain relief. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987). And as to both claims, defendants say that injunctive relief is premature because they already have a remediation plan in place and that plan has been approved by the Wisconsin Department of Natural Resources. The court will consider each argument in turn.

**A. Resource Conservation and Recovery Act**

It is undisputed that the soil in the Liebharts' property contains varying levels of PCBs according to testing conducted by SPX. But that fact, defendants say, is not sufficient to support a claim under the RCRA for two reasons: (1) the Liebharts have failed to adduce evidence that any of the PCBs discovered on their property are the result of the demolition; and (2) even if some of the PCBs are the result of the demolition, the Liebharts have failed to adduce evidence that the level of PCBs attributable to the demolition pose an "imminent and substantial" threat of harm.

As to the first reason, both sides assume that none of the defendants can be held liable for any PCB contamination on the Liebharts' property that occurred before the demolition began, so the court will make the same assumption. According to defendants' expert, Russell Keenan, the PCBs in the soil are not the result of the demolition project but of many decades of sharing close quarters with an industrial site that used PCBs. Dkt. 116, at 23. Neither side provided sampling evidence of the Liebhart's property taken before the demolition started, so a direct before-and-after comparison is impossible.

To support his conclusion that the PCBs are not from the demolition, Keenan relied on the following information: (1) surface soil samples taken on the demolition site itself had *lesser* concentrations of PCBs than the soil on the Liebharts' property, *id.* at 16–17; (2) the Liebharts'

5

soil contained PCBs even beneath the Liebharts' asphalt driveway, which would have provided a barrier against recently deposited PCB dust, *id.* at 21; (3) the greatest concentrations of PCBs were found at greater depths, making it improbable that the PCBs were of recent origin, *id.* at 23; (4) the highest concentrations of PCBs in the surface soil were in areas that the Liebharts admitted they had filled in with subsurface soil for various yard projects in the years before the demolition began, *id.* at 24.

The Liebharts do not directly challenge any of the information that Keenan cites. Their own causation expert, John Woodyard devotes most of his report criticizing the demolition plan and the steps taken to avoid propagation of PCBs. This appears to be his main area of expertise, as he is an engineer with experience with site-remediation plans. But the Liebharts' also rely on him to establish the causal link between the demolition and the contamination of the Liebharts' property, and his treatment of this topic is less than a full page of his report. Dkt. 117, at 8-9. The gist of his opinion is that the demolition created dust that the wind blew toward the Liebharts' property, and this dust must have contained PCBs. But his opinion is fundamentally unreliable for several reasons.

First, Woodyard's conclusions are equivocal. He admitted during his deposition that he "d[id]n't have enough information" to determine to a reasonable degree of certainty whether the PCB contamination in the Liebharts' soil was caused by demolition dust, at least as to soil at depths of more than eight inches. Dkt. 101 (Woodyard Dep. 95:15–97:18). Even as to shallower soil depths, he admitted that he "didn't do any investigation or analysis to rule out any previous emissions or transport of PCBs from the SPX properties to the Liebhart properties." *Id.* at 31:1–10.

6

His report is equivocal on other important points as well. He says, for example, that "[t]he demolition and resulting dust emissions *may have* exceeded OSHA occupational dust standards." Dkt. 117, at 11 (emphasis added). Woodyard acknowledges that "runoff" could account for virtually any PCBs found in the soil on the Liebhart property. Dkt. 101 (Woodyard Dep. 162:17–164:18). The Liebharts are correct that Woodyard confidently states his ultimate conclusion that the contamination came from demolition dust. But the building blocks of his analysis are stated as mere possibilities.

A second problem with Woodyard's analysis is that it overlooks too much significant evidence, and the obvious explanation that the PCBs on the Liebhart property accumulated over decades before the demolition. Woodyard does not consider that the Liebharts' various yard projects involved redistributing soil throughout the property, so even surface soil might contain PCBs from years past. He does not consider that neither the Liebharts' blood nor the dust in their home showed the presence of PCBs. The court of appeals, following Committee Notes of Rule 702 of the Federal Rules of Evidence, instructs that a court may consider "[w]hether the expert has adequately accounted for obvious alternative explanations" when deciding whether expert testimony is reliable. *E.g.*, *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 787 (7th Cir. 2017); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014); *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433–34 (7th Cir. 2013). Defendants cited this principle in their motion to strike Woodyard's opinions, but the Liebharts did not respond, which could be reason enough to disregard's Woodyard's causation opinion. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

7

A third problem is that even the evidence that Woodyard does discuss is unreliable or uninformative. Woodyard says that the specific type of PCB can be a useful forensic tool to identify the source of contamination. Dkt. 117, at 8. But the PCBs involved are all Aroclor 1260, so the type of PCB does not show that the PCBs at the Liebhart property came from the demolition. No one has suggested that the PCBs came from a source other than the SPX site. Woodyard says that during the demolition, the "prevailing wind" blew in the direction of the Liebhart property. But this is wrong: the prevailing wind at that time of year is from the west and north. Dkt. 116, at 32-38. The evidence suggests that during the demolition, the wind infrequently blew from the east and south toward the Liebhart property.

Woodyard also cites a snow sample, purportedly collected by William Liebhart during the demolition, which tested positive for the presence of Aroclor 1260. Woodyard says that this is proof the PCB-laden dust "reached and impacted" the Liebhart property. Dkt. 117, at 12. But this conclusion is unreliable for several reasons. First, Woodyard knew nothing about how the snow sample was collected, maintained, or tested. Defendants have shown that William Liebhart scooped up some snow into an old Mason jar and a baggie and left the samples for months before testing. The test report identified the sample as "noncompliant." Woodyard's report says that the sample was collected from fresh snow, based on his review of a photograph, but that was completely rebutted at his deposition. Defendants had no opportunity to test the sample. The bottom line is that Woodyard knew only what he was told about the snow sample, and he did not consider whether it was a reliable specimen.[4]

---

[4] The Liebharts rely solely on William's testimony in their proposed findings of fact to support the statement that "the [snow] sample showed the presence of PCBs." Dkt. 160, ¶ 112. That testimony is hearsay and is inadmissible because William is not qualified to interpret the results.In their reply in support of their proposed findings of fact, the Liebharts cite a different document, Dkt. 139-29, which they say shows the results of the snow sample. But parties

Woodyard's opinion that the demolition was the cause of PCB contamination of the Liebhart's property is conclusory and fundamentally unreliable. The court will grant defendants motion to exclude it. The Liebharts do not challenge defendants' contention that the Liebharts cannot prove causation without an expert, so the exclusion of this opinion would be enough to doom the Liebharts' case.

But there are further problems with the Liebharts' evidence. Some significant examples are: (1) various photographs and videos showing dust clouds are not accompanied by corresponding testimony showing either that the dust included PCBs or that the dust settled on the Liebharts' property; (2) a grass sample and a chromatogram allegedly showing PCBs is not admissible because the Liebharts' expert didn't consider it in his expert report, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008); (3) evidence that defendants didn't take adequate precautions to prevent PCB dust from spreading may be evidence of negligence, but doesn't show that PCBs actually fell on the Liebharts' property; and (4) similarly, meteorological data showing the direction of the wind during the demolition doesn't show that any PCBs actually landed on the Liebharts' property.

The most fundamental problem is this. Even if the court assumes that the demolition transported some PCBs to the Liebharts' property, the Liebharts do not cite any evidence or develop an argument that some particular amount can be attributed to the demolition, or that whatever amount can be attributed qualifies as an imminent and substantial danger. In fact, the Liebharts do not address this issue *at all* in their opposition to defendants' summary

---

cannot rely on new evidence in their reply submissions. *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990). Regardless, even that document is simply attached to a declaration submitted by counsel without any authenticating testimony explaining what the document is or what it means.

judgment motion, even though it is one of defendants' primary arguments. And the Liebharts ignore a case cited by defendants, *Foster v. United States*, 922 F. Supp. 642 (D.D.C. 1996), in which the court concluded that it doesn't follow necessarily that there is an imminent and substantial risk of harm simply because there is some amount of PCBs on the property. *Id.* at 662 ("While there can be no question that the levels of contamination present at the Site may warrant future response action, the plaintiff cannot establish either a current risk of substantial or serious threatened harm, or some necessity for action.") (internal quotations omitted).

In their own summary judgment motion, the Liebharts appear to indirectly challenge the conclusion in *Foster* by contending that *any* amount of PCBs qualifies as an imminent and substantial danger. They cite statutes and regulations that greatly restrict the manufacture and distribution of PCBs. *E.g.*, 15 U.S.C. § 2605(e)(1) and 40 C.F.R. § 761.20. But none of the cited laws state that any amount of PCBs in the soil is dangerous. Rather, as the Liebharts acknowledge elsewhere in their summary judgment materials, "[t]he [EPA's] accepted safe level of PCBs in the environment is fifty parts per million." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 148 (7th Cir. 1994) (citing 40 C.F.R. § 761.60). The Liebharts have not shown the demolition is responsible for that level of PCBs in their soil.

Alternatively, the Liebharts quote a line from their expert David Carpenter that "there is no 'safe' level of exposure to PCBs that does not increase the risk of disease." Dkt. 113, at 19 (quoting Dkt. 118, at 29). But Carpenter doesn't support that statement, so it is not admissible. *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) ("A court should not 'admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'") (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Although he cites various studies showing that PCBs can have harmful health effects, Dkt. 118, at 22–27, he doesn't say

10

that any of those studies show that any amount of exposure is harmful. More important, the Liebharts do not cite any evidence that they *have* been exposed to PCBs. Defendants adduce test results showing that neither the Liebharts' blood nor the dust in their home showed the presence of PCBs. Dkt 160, ¶¶ 49–55. The Liebharts challenge the accuracy of those tests, but Liebharts cite no other evidence supporting a conclusion that PCBs are in their blood or their home.

The Liebharts do not contend that they can prove an imminent and substantial danger with evidence of health problems they have already suffered. In fact, in response to defendants' argument that the Liebharts haven't shown any physical harm caused by the demolition, the Liebharts say that defendants are "miss[ing] the point" because defendants have caused "unbearable severe stress." Dkt. 143, at 12 and 15. Regardless, because the Liebharts do not contend that their own physical or mental health conditions are evidence of an imminent and substantial danger, the court hasn't considered that issue.

The bottom line is that the Liebharts have not adduced that defendants' conduct has created an "imminent and substantial" threat of harm to their health or their environment. Accordingly, defendants are entitled to summary judgment on the Liebharts' claim under the RCRA.

**B. Toxic Substances Control Act**

Defendants contend that the Liebharts have failed to show that there is an "ongoing violation" of the TSCA because the demolition was completed before the Liebharts filed this lawsuit. For reasons they do not explain, the Liebharts do not address this issue, either in their response to defendants' summary judgment motion or in their opening brief in support of their

11

own summary judgment motion. Although they do discuss the issue in their reply brief, that was too late. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

In any event, the alleged ongoing violation the Liebharts identify in their reply brief is that defendants failed to clean up a PCB "spill" in violation of 40 C.F.R. § 761.125. That regulation applies "to all spills of PCBs at concentrations of 50 ppm or greater." As discussed above, the Liebharts have not adduced evidence that there *was* a PCB spill of a concentration greater than 50 ppm on their property, so this claim fails as well.

## C. Injunctive relief under the RCRA and TSCA

Even if the court assumes that the Liebharts adduced sufficient evidence to show that defendants violated the RCRA or TSCA, it would not necessarily follow that the Liebharts are entitled to an injunction under either law. "An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief. Equitable relief is not granted as a matter of course." *Salazar v. Buono*, 559 U.S. 700, 714 (2010) (citations omitted).

In this case, defendants say that injunctive relief is unnecessary or at least premature under either the RCRA or TSCA in light of a remediation plan that SPX began formulating even before this lawsuit and has since been approved by the Wisconsin Department of Natural Resources. Under the plan, SPX will conduct further sampling of the soil on both the Liebharts' and SPX's property and remove soil that is contaminated, regardless whether the cause of the contamination was the demolition. Dkt. 92-19–92-23.

Defendants cite three cases in which the court declined to order injunctive relief in light of a remediation plan that was already in place. *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, No. 99 CIV. 0275 (RWS), 2004 WL 1811427, at *11 (S.D.N.Y. Aug. 12, 2004); *87th St.*

*Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1219 (S.D.N.Y. 2002); *Christie-Spencer Corp. v. Hausman Realty Co.*, 118 F. Supp. 2d 408, 420–21 (S.D.N.Y. 2000). The key conclusion in each case was that the plaintiffs had failed to show that the remediation plans would fail to eliminate any imminent and substantial dangers.

Although all of the cited cases arose under the RCRA rather than the TSCA, they are consistent with the general rule that a court may not issue an injunction in the absence of irreparable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010). If a plan is already in place to eliminate harm to the plaintiffs, then an injunction is not needed. The cases are also consistent with the view expressed in *Farmer v. Brennan,* 511 U.S. 825, 847 (1994), that a court considering whether to grant an injunction may take into account whether the plaintiff has taken advantage of other available procedures.

The Liebharts devote one page of their opposition brief to this issue and raise several undeveloped arguments, none of which are persuasive. First, they say that Wisconsin's approval of SPX's remediation plan is irrelevant because the duties under the TSCA are "not delegable to the states." Dkt. 143, at 11. But regardless whether that is true, it has nothing to do with the question whether the Liebharts have shown that they are entitled to injunctive relief.

Second, the Liebharts say that SPX has not identified what efforts it is taking to implement the plan. This contention is confusing because it is undisputed that SPX first submitted its remediation plan to the Wisconsin in September 2016 (before the Liebharts filed this lawsuit) and since then has made multiple revisions in response to input from the state. Dkt. 160, ¶¶ 128–35.[5] The Liebharts do not allege that there has been an undue delay and

---

[5] Although the Liebharts "dispute" these proposed findings of fact, they do not actually cite any contrary evidence. Rather, they simply allege additional facts that are not responsive to

they do not identify any reason for concluding that the plan will not be implemented. It is undisputed that SPX is awaiting approval from the Liebharts to obtain access to their property to conduct the necessary sampling. *Id.,* ¶ 135.

Third, the Liebharts say that SPX's plan doesn't "contain any commitment by SPX or TRC to comply with the federal PCB regulations." Dkt. 143, at 11. Although it is true that SPX's remediation plan does not cite federal regulations, that is not dispositive. The question under the RCRA is not whether defendants are complying with particular regulations; it is whether they are subjecting plaintiffs or their property to an imminent and substantial danger. Even as to the TSCA, it is not important whether the plan *cites* particular regulations, so long as it complies with them. The Liebharts' opposition brief does not identify any way that SPX's plan is deficient or violates federal law.

In their reply brief in support of their own summary judgment motion, the Liebharts say that SPX's plan is inadequate because it does not contain "a statistically-based sampling scheme" as required by 40 C.F.R. § 761.125. Again, a party may not raise an argument for the first time in a reply brief. Regardless, the Liebharts do not explain how SPX's plan departs from § 761.125 in any meaningful way and they do not otherwise explain why SPX's proposed sampling scheme is substantively inadequate. In the absence of that type of showing, injunctive relief is not appropriate.

**D. New claim**

The Liebharts seek to amend their complaint to add a new claim that defendants violated both the RCRA and the TSCA (as well as committed various common law torts) by

---

the proposed findings.

allegedly burying contaminated concrete on the demolition site rather than removing it. The court will deny this motion for two reasons.

First, the proposed amendment is both untimely and unfairly prejudicial. *Life Plans, Inc. v. Security Life of Denver Insurance Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (district court may deny leave to amend complaint on grounds of "futility, undue delay, undue prejudice, or bad faith"). The Liebharts did not move to amend their complaint until February 22, 2018, more than a month after the parties finished briefing their summary judgment motions, and fewer than three months before trial. That is far too late to insert new claims in the case. *Cf. Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (internal quotations omitted). Although the Liebharts blame defendants for failing to timely disclose information related to the claim, the Liebharts admit that they had notice no later than October 11, 2017, yet they fail to provide any justification for waiting another four months to seek leave to amend.

Second, the proposed amendment is futile. The RCRA and the TSCA require the plaintiff to give notice to the EPA 60 to 90 days *before* filing a claim. 42 U.S.C. § 6972(b)(2) (90-day notice under RCRA); 15 U.S.C. § 2619(b)(1)(A) (60-day notice under TSCA). Among other things, the notice must include "sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated" and "the activity alleged to constitute a violation." 40 C.F.R. § 254.3(a). *See also Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997) (applying similar standard in 40 C.F.R. § 135.3(a) to notice required under Clean Water Act). Failure to

serve the required notice at the appropriate time requires dismissal of the claim. *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31–32 (1989).

The Liebharts do not challenge this legal standard and they do not allege that they served the EPA with a new notice before filing their motion for leave to amend. Instead, they say that their original notice served in April 2016 complied with the statutory requirements. Dkt. 186-1. That contention fails because the Liebharts cite no language in that notice that addresses the issue of burying PCBs. Rather, the focus of the original notice was that the demolition "caused the release of large quantities of PCB-laden particulates, which settled on the Liebharts' properties." *Id.* at 4. Thus, even if the Liebharts' motion were timely, the court would deny the motion for their failure to comply with the statutory notice requirement.

Because the Liebharts' motion to supplement Carpenter's expert report is related to the proposed new claims, the court will deny that motion as well. The court will deny as moot SPX's motion to strike materials the Leibharts' filed with their reply brief in support of these motions. Even if the court considered those materials, they would make no difference to the resolution of the motions.

E. **State law claims**

The Liebharts rely solely on 28 U.S.C. § 1367 to support an exercise of jurisdiction over their state law claims. Dkt. 2, ¶ 14. Under these circumstances, the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). Because the parties do not identify any reason that the court should depart from the general rule in this case, the court will dismiss the Liebharts' state law claims without prejudice to their refiling those claims in state court.

ORDER

IT IS ORDERED that:

1. The motions for summary judgment filed by defendants SPX Corporation, TRC Environmental Corporation, and Apollo Dismantling Services, Inc., Dkt. 79, 89, and 102, are GRANTED as to the federal claims in this case. The state law claims are DISMISSED without prejudice in accordance with 28 U.S.C. § 1367(c)(3).

2. The motion for summary judgment filed by plaintiffs William Liebhart and Nancy Liebhart, Dkt. 86, is DENIED.

3. Defendants' motions to exclude the opinions of David Carpenter and John Woodyard, Dkts. 80–81, 90–91, and 105–06, are GRANTED IN PART as discussed in this opinion and otherwise DENIED as moot.

4. The Liebharts' motions for leave to amend their complaint, Dkt. 164, and to supplement Carpenter's expert report, Dkt. 176, are DENIED.

5. The following motions are DENIED as moot: (1) defendants' motion to strike materials submitted to support the Liebharts' motion for leave to amend, Dkt. 188; and (2) defendants' motion to exclude the opinions of Jonathan Libber, Dkts. 192, 197, and 198.

6. The clerk of court is directed to enter judgment accordingly and close this case.

Entered March 30, 2018.

                                                BY THE COURT:

                                                /s/

                                                _____
                                                JAMES D. PETERSON
                                                District Judge